UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

UNITED STATES,
     Plaintiff,

CASE NO.: 2:15-cr-14045-RLR

RICHARD AHEARN,
     Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

RICHARD AHEARN, by and through his undersigned attorneys, respectfully submit his Sentencing Memorandum for this Honorable Court's consideration.

Mr. Ahearn requests this Court to determine that a variance from the applicable guideline range is appropriate under 18 U.S.C. § 3553 and thus impose a sentence below the sentence advised by the United States Sentencing Guidelines. In particular, Ms. Ahearn requests a sentence of five years incarceration.

**STATEMENT OF FACTS**

On July 29, 2015, Mr. Ahern came before the Court for arraignment on an Indictment alleging violations of Count One, 18 U.S.C. § 2252(a)(2),(b)(1) (receiving material involving sexual exploitation of minors) and § 2252(a)(4)(B),(b)(2) (possession of child pornography). (Doc. 3). On November 5, 2015, Mr. Ahearn entered a plea to the Court. (Doc. 34). Mr. Ahearn's sentencing hearing is set for January 26, 2016 at 9:00 a.m. (Doc. 42).

The Presentence Report (PSR) in this case calculates Mr. Ahearn's total offense level as 30 with a criminal history category of I.  (PSR at ¶¶ 27, 30). Thus, Mr. Ahearn faces a guidelines range of 97 to 121 months of imprisonment. (PSR at ¶ 61).   In addition, Mr. Ahearn faces a

mandatory minimum[1] sentence of five years incarceration pursuant to 18 U.S.C. § 2252A(b)(1). (PSR at ¶ 60).

Mr. Ahearn has raised an objection to the scoring of a five-level enhancement for distribution pursuant to USSG § 2G2.2(b)(3)(B). (PSR ¶ 17). Mr. Ahearn also submits that his guideline offense level should start at a 20 rather than 22 pursuant to USSG § 2G2.2(b)(1) (stating that a two-level decrease is warranted if the defendant's conduct was limited to receipt of child pornography and he did not intend to traffic in or distribute the illegal images). If this Court were to sustain said objections, Mr. Ahearn's offense level would be 23 and he would face a guidelines range of 46 to 57 months. However, Mr. Ahearn would still be subject to the five year mandatory minimum incarceration pursuant to 18 U.S.C. § 2252A(b)(1).

## <u>MEMORANDUM OF LAW</u>

This Memorandum addresses the issue of the appropriate sentence for Mr. Ahearn based on his 18 U.S.C. § 2252(a)(2),(b)(1) and 18 U.S.C. § 2252(a)(4)(B),(b)(2) convictions. The Memorandum examines the issue of whether a variance is appropriate pursuant to 18 U.S.C. § 3553, notwithstanding the calculation of the sentence determined by the guidelines. As established in the following sections, a variance is warranted in Mr. Ahearn's case based on the

---

[1] Article III of the United States Constitution provides the judiciary with the express authority to decide all cases and controversies. U.S. Const. art. III § 2. Despite this constitutional guarantee, mandatory minimum sentences transfer judicial power to the legislative and executive branches. Faced with a minimum mandatory statute, a judge loses his or her discretion to "impose a sentence that is sufficient, but not greater than necessary" to accomplish the goals of sentencing as required under 18 U.S.C. § 3553. *See United States v. Polizzi*, 549 F.Supp.2d 308, 399 (E.D.N.Y. 2008)(Weinstein, J.)(vacated and remanded by *United States v. Polizzi*, 564 F.3d 142 (2d Cir. 2009). The loss of judicial discretion is hostile to the pursuit of justice in our sentencing system. *See id. See also* Justice Stephen Breyer, *Address at John F. Kennedy Law Library* (Sept. 21, 2003)(asserting that mandatory minimum sentences prevent fairness in sentencing).

factors set forth in § 3553(a).

I.      ***Booker and its Progeny Provides the Court with the Discretion to Impose a Sentence of Home Detention***

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). The use of the guidelines in other than an advisory function violates the defendant's Sixth Amendment Rights. *Booker,* 543 U.S. at 244-45 (Part Two, Breyer, J.). Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory guidelines range, but also the facts of a specific case through the lens of seven factors. *Id.* § 3553(a)(1)-(7). In *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006), the court summarized the factors that must be considered under § 3553(a), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id*. at 1182.

Against this backdrop of factors, a variance from the advisory guidelines is warranted in Mr. Ahearn's case.

1.      **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Although Mr. Ahearn's crime is serious, the particular circumstances of his case establish a set of mitigating factors. As the following sections demonstrate, Mr. Ahearn's actions in this case are entirely inconsistent with the life he has led and the man he has proven to be.

> ***A.      The History and Characteristics of the Defendant***

Pursuant to § 3553(a), a consideration of Mr. Ahearn's sentence should take into account his life history. Such an analysis is especially critical in Mr. Ahearn's case since his exceptional and redeeming qualities demonstrate that his criminal actions are aberrant when viewed against the backdrop of his entire life.

<strong><u>Introduction</u></strong>

Mr. Ahearn is a 56-year-old man who has proven to be a hard working man. Because of the man he is, Mr. Ahearn enjoys familial support, as demonstrated by the letters submitted on his behalf. (*See* letters of support filed under separate cover). These letters depict a man who has strong bonds and a loving relationship with his wife.

> ***Early Life***

Richard Ahearn was born as the fourth of six children to the union of John Jack Ahearn, Jr. and Dawn Lecuyer. (PSR ¶ 35). Tragically, the Ahearn children grew up scarred by abuse. (PSR ¶¶ 40-42). As a young child, Mr. Ahearn was physically and sexually abused by his older and mentally handicapped brother from the ages of five to eight years. (PSR ¶ 40). After learning

of the physical abuse, Mr. Ahearn's parents moved the older brother into a group home for mentally handicapped persons. (*Id*.). However, Mr. Ahearn never reported the sexual abuse and continued to be haunted by the affects of the abuse. (*Id*.).

After Mr. Ahearn's older brother had left the familial home, but while he was still a child, Mr. Ahearn discovered signs that his parents had sexually abused his sisters. (PSR ¶ 41, *see also* letters of support filed under separate cover). However, it would not be until their adulthood that the sisters acknowledged the abuse that they had endured. Tragically, Mr. Ahearn now understands now that his older brother's abuse may have been "acting out" in response to the sexualized and confusing behavior that he had witnessed among other family members.

Mr. Ahearn focused the pain and energy from his troubled home into his schoolwork and athletics, where he excelled. Mr. Ahearn graduated sixth out of a class of 111 students and attained a GPA of 90.57%. (PSR ¶ 44). He participated in football, baseball, track, bowling, weightlifting, and the Spanish Club. *(Id.)*. After high school he attended college, where he maintained a cumulative GPA of 3.61. (PSR ¶ 45). However, despite the hard work ethic and intelligence reflected in his high school accomplishments, Mr. Ahearn did not complete college. Rather, he left to work full-time and financially support his wife as she pursued an education. (PSR ¶ 45; *see also* Evaluation Report by Dr. Imhof, filed under seal and separate cover, at 1, herein after referred to as "Report"). During this time, Mr. Ahearn taught himself computer science and he eventually he obtained a professional certificate in computer repair certification. (PSR ¶ 46). Mr. Ahearn continued to work in the field of computer science until the date of his arrest. (PSR ¶ 48).

As an adult, Mr. Ahearn sought treatment for mental health after experiencing

uncharacteristic and embarrassing anger outbursts. (PSR ¶ 42). Mr. Ahearn's treating psychiatrist diagnosed Mr. Ahearn with bipolar disorder[2] and prescribed mood stabilizers. *(Id.)*. After experiencing relief, Mr. Ahearn, like so many persons suffering from mental health disorders, discontinued his medication. *(Id.)*.  During this time, Mr. Ahearn self-medicated with alcohol and struggled with depression.[3]

Despite having these challenges in his life, Mr. Ahearn has enjoyed sharing a strong relationship with his wife Mary, for the past 11 years. (*See* PSR ¶ 38). Together they worked to save their income and investment in a modest property on the Gulf Coast that they dreamed about retiring to. In addition, Mr. Ahearn enjoyed charity events, particularly his participation for years in the local Chili Cook-off. (*See* newspaper articles, attached hereto as Exh. 1; *see also* letters of support filed under separate cover).

To this day, the abuse from Mr. Ahearn's childhood has caused him a great deal of torment and suffering, masking itself with depression and self-medication. (*See generally*, Report 1 at 2). However, despite the pain that Mr. Ahearn and his siblings endure, they maintain good bonds with each other and lend support to one another. (*See* letters of support filed under separate cover).

**B.**      ***The Nature and Circumstances of the Offense***

Mr. Ahearn's use of the internet to access the images at issue in this case, while obviously

---

[2] As reported by the National Institute of Health, bipolar disorder is a brain disorder recognized by the Diagnostic and Statistical Manual of Mental Disorders (DSM) that "causes unusual shifts in mood, energy, activity levels, and the ability to carry out daily tasks." Nat'l Institute of Health, "Bipolar Disorder in Adults" available at   http://www.nimh.nih.gov/health/publications/bipolar-disorder-in-adults/index.shtml (last visited Jan. 22, 2016).

[3] The National Institute of Health reports that substance abuse often co-exists with bipolar disorder as a form of self-medication. *See* n.2.

improper and illegal, facilitated and encouraged the commission of his offense. *See* Neal Kumar Katyal, Criminal Law in Cyberspace, 149 U. Pa. L. Rev. 1003, 1028 (2001)("Whereas a piece of child pornography once might have only reached a few thousand people who bought a magazine, with the internet it can reach millions very quickly."). While easy access to the illegal images does not excuse Mr. Ahearn's conduct, it underscores the proposition that defendants can easily and quickly gain access to and download a vast number of illegal images via the internet.

To further place Mr. Ahearn's actions in context, his offense did not involve contact or solicitation of minors. (PSR ¶ 6). Moreover, there is no evidence establishing that Mr. Ahearn ever had sexual conduct with a minor. (*See* Polygraph Reports, attached hereto as Exh. 2, *see also* Report at 1),  *compare United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007)(affirming variance from guideline range of 151-188 months to 84 months, notwithstanding defendant's prior convictions for lewd acts on a minor).

Finally, Mr. Ahearn did not produce or distribute child pornography. As a result, Mr. Ahearn is facing severe penalties based on guideline enhancements that were promulgated with a different type of offender in mind. *See, e.g., United States v. Cruikshank*, 667 F.Supp.2d 697, 703 (S.D.W.Va. 2009)("Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies of rate depraved producers and publishers."). Indeed, the legislative history regarding the child pornography guidelines demonstrate a lamentable and erroneous Congressional belief that individuals who view child

pornography are actually child molesters.[4] Such a skewed and unfounded perspective does not provide a rational basis for a defendant's sentence. *See, e.g.*, *United States v. Marshall*, 870 F.Supp.2d 489, 491-92 (N.D. Ohio 2012)(rejecting presumption that "those who view child pornography are indistinguishable from those who actually abuse children," finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation."); *United States v. Grober*, 595 F.Supp2d 382, 404 (D.N.J. 2008)("[T]he Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through actual contact."). *See also* Andres E. Hernandez, Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment at 4 (2009) available at http://www.iprc.unc.edu/G8/ Hernandez_position_paper_Global_Symposium.pdf (stating that "the argument that the majority of [child pornography] offenders are indeed contact sexual offenders, and therefore, dangerous predators . . . simply is not supported by the scientific evidence.").

For discussion purposes herein, assume *arguendo* that Mr. Ahearn had been permitted to enter a plea agreement to only the charge of possession of child pornography.[5] In that instance,

---

[4] *See* 137 Cong. Rec. S10323 (July 18, 1991)(Senator Helms)(in support of directing increase to base offense level from 10 to 13); id. at H6736, H6738 (Sept. 24, 1991)(Representative Wolf) (same); 141 COng. Rec. S5509 (Apr. 6, 1995)(Senator Grassley)(in support of directing additional increase in base offense level from 13 to 15); 144 Cong. Rec. S12262 (Oct. 9, 1998) (Senator Hatch)(in support of directing expanded reach of "distribution" enhancement); 149 Cong. Rec. S5126 (Apr. 10, 2003)(Senator Hatch)(in support of Feeney Amendment, which included number-of-images enhancement); s*ee also generally* Child Pornography Prevention Act of 2006, Pub. L. No. 104-208, s. 121, 110 Stat. 3009, 3009-26 (1996); S. Rep. No. 108-2 at 3 (2003); S. Rep. No. 104-358 at 12-14 (1996); USSG app. C, amend. 592 (Nov. 1, 2000).

[5] In the instant case, the government refused to extend a plea offer where the defendant could plea to only the possession charge. While this is well within the discretion of the Office of the U.S. Attorney, the government has on other occasions extended offers which permitted a defendant to plea to possession and in exchange receive a dismissal to the receipt charge. *See USA v. Lapidus*, Case No.: 2:15-cr-14044-RLR (S.D. Fla., Oct. 28, 2015, J. Rosenberg). The purpose of this argument is only to demonstrate the arbitrariness of the guidelines.

Mr. Ahearn would face an offense level of 18 (guidelines range of 27-33 months) and not be subject to the five year mandatory minimum. However, because the government did not extend such an offer, Mr. Ahearn faces an offense level of 22 (guidelines range of 41-51 months) and a five year mandatory minimum.[6] The significant disparity in this sentencing scheme reflects a painful reality and problem in the sentencing guidelines. As testified by Chief Judge Casey Rodgers of the Northern District of Florida, "there is no meaningful difference between receipt [and] possession." Testimony of Chief Judge Casey Rodgers (N.D. Fla.), Criminal Law Committee of Judicial Conference, Feb. 15, 2012.

Second, the application of the guidelines pursuant to § 2G2.2 causes an arbitrary and illogical increase in the base offense level. Specifically, the five-level increase for "distribution" pursuant to § 2G2.2(b)(3)(B) drastically increases the guidelines range from a **57-71** months (level 25) to the guidelines range of **97-121** months (level 30). Furthermore, pursuant to §2G2.2(b)(3)(B), this increase may occur from the distribution of a *single* image, as alleged in the instant case. (*See* PSR Addendum).

Lastly, the application of a two level increase pursuant to § 2G2.2(b)(6) is simply redundant in today's technological world. As District Court Judge Robin Cauthron of the Western District of Oklahoma stated, "[a]s widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved." Federal Sentencing Practices operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n at 5 (Nov. 2009)(statement of Robin J. Cathron, Judge,

---

[6] How irrational indeed is this scenario, where the legislature imposes a five year mandatory minimum for a charge which carries a guideline range of only 41-51 months!

W.D. Okla.), available at http://www.ussc.gov/AGENDAS/20091119/Cauthron.pdf.

**The Need for the Sentence Imposed**

> A.    *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

Mr. Ahearn recognizes that his offense is a serious crime and that the production of child pornography and the subsequent circulation of such images results in intrinsic harm to children. However, he respectfully submits that his lack of any prior contact with minors and his lack of ever enticing a child to meet is a mitigating factor in his case.

As a result of the instant case, Mr. Ahearn will continue to suffer significant punishment, as he will be separated from his family during his incarceration and has lost his job as a result of his arrest. Such a loss of his career constitutes a significant loss in income and his ability to contribute financially to his family. Even after his release, Mr. Ahearn will have limited access to computers as a result of his sex offender conditions of supervision, affecting his chances for future employment in computer science. (PSR ¶¶ 74, 75). As a result of his conviction and status, Mr. Ahearn will have difficulty finding employment and financially contributing to his family as he always has. Mr. Ahearn has suffered and will continue to suffer significant punishment as result of his conviction and sex offender status. Specifically, Mr. Ahearn will be a registered sex offender for the rest of his life and face housing, employment, and personal limitations as a result of this status. *See* Economist, Unjust and Ineffective (Aug. 6, 2009); hereto attached as Exh. 3). Based on the punishment that Mr. Ahearn has received and will continue to receive, he submits that additional incarceration beyond five years imprisonment is not necessary to punish him for the allegations of the instant offense or to deter others from committing such an offense.

B.        *To afford adequate deterrence to criminal conduct*

The weak to nonexistent correlation between punishment levels and deterrence is particularly evident in the context of child pornography offenses. *See, e.g.*, U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (Dec. 2012)(herein after "CP Report"). The United States Sentencing Commission has concluded that there is no social science research available to support the theory that criminal punishments have impacted commercial or non-commercial markets in child pornography since the advent of the Internet. (*Id*. at 98).

Notwithstanding, Mr. Ahearn respectfully submits that his registration as a sex offender, the loss of his livelihood, as well as five-year term imprisonment, adequately addresses any concern regarding general deterrence.

C. *To protect the public from further crimes of the defendant*

The need to protect the public from future crimes by Mr. Ahearn is minimal because Mr. Ahearn poses an exceptionally low risk of recidivism. Mr. Ahearn is 56 years old, has a professional certificate, stable employment, and has been married for 11 years. Because of his age, education, family support, marital status and employment history, Mr. Ahearn poses an extremely low risk of recidivism. (*See* U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12 (May 2004), hereto attached as Ex. 4). For all male offenders in Criminal History Category I over the age 50, the rate of recidivism is only 6.2%. (*Id*. at 28, Tbl. 11). Furthermore, Dr. Imhof opined that the associated risk to commit a future contact sexual offense is considered to be "approximately 1.9% to 3.6%, a non-contact

sexual offense is 1.5% to 10.3%, and a child pornography offense is approximately 2.3% to 12%

between approximately six to eight and a half years." (Report at 4).

The United States Sentencing Commission has recognized the advisability of revising the

guidelines to take age and first offender status into account. (Exh. 4 at 16) (noting that

"[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the

guidelines "if incorporated into the criminal history computation"). Although the Commission

has not implemented any such revisions to the criminal history guidelines, it has noted that age

"may be relevant" in granting a departure. *See* U.S.S.G. § 5H1.1. In imposing the least sentence

sufficient to account for the need to protect the public from further crimes of Mr. Ahearn, this

Court should consider the statistically low risk of recidivism presented by Mr. Ahearn. *See, e.g.*,

*United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009)("the district court abused its

discretion in not taking into account policy considerations with regard to age recidivism not

included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)(affirming

below-guideline sentence based on defendant's age, which made it unlikely that he would again

be involved in a violent crime); *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D.

Wis. Mar. 5, 2009)(considering low risk of recidivism indicated by defendant's lack of criminal

record, positive work history, and strong family ties); *Simon v. United States*, 361 F. Supp. 2d 35,

48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because

recidivism drops substantially with age).

In addition, Mr. Ahearn is a low risk to commit future sexual offenses, either a contact or

child pornography offense "based on his lack of antisocial orientation, positive general self-

management, and limited but positive social/community supports." (Report at 3-5).[7] Furthermore, Dr. Imhof reported that Mr. Ahearn appeared amenable to treatment and his risk of recidivism will decline with appropriate treatment. (*Id.*). In addition, after serving a five year sentence, Mr. Ahearn will be over 60 years old, at which point he is at an even lesser risk of recidivating. (Report at 5)("Further, research has demonstrated that risk for sexual re-offense declines steadily beginning at approximately age forty and rapidly decreases around the age of sixty at which point risk becomes negligible suggesting reduced risk due to Mr. Ahearn's age.").

In conclusion, Mr. Ahearn's request for a 5-year sentence is supported by his extremely low risk of recidivism. The fact that Mr. Ahearn will not be able to access the internet as a condition of his release and will have to register as a sex offender for the rest of his life provide adequate protection to the public. Moreover, a condition that requires him to participate in sex offender treatment as a condition of probation will adequately address any recidivist concerns regarding Mr. Ahearn.

### 3. The Kinds of Sentences Available

A five year mandatory minimum imprisonment applies pursuant to 18 U.S.C. § 2252(b) (1). As noted in Section I, *supra*, the guideline sentence is merely advisory, not mandatory.

### 1. The Kinds of Sentence and the Guideline Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements

---

[7] As explained by the National Institute of Health, psychopathical traits are the hallmark characteristic of "antisocial personality disorder," a mental condition in which a person has a "long-term pattern of manipulating, exploiting, or violation the rights of others." Nat'l Institute of Health, "Antisocial personality disorder" available at https://www.nlm.nih.gov/medlineplus/ ency/article/000921.htm (last visited Jan. 22, 2016). In context, the lack of antisocial traits or orientation demonstrate that Mr. Ahearn does not meet criteria for psychopathy, sociopathology, or anti-social personality disorder.

Although the impact of the guidelines on a court's sentencing discretion has been discussed in Section I, *supra*, the critical question in Mr. Ahearn's case is the exact weight this Court should give to the guidelines.  As recognized in *Gall*, district courts "may not presume that the Guidelines range is reasonable."   552 U.S. at 49, *see also Rita*, 551 U.S. at 351 ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").   Thus, as recognized by Judge Tjoflat, in some cases the Guidelines may have little persuasive force in light of some of the other § 3553(a) factors:

> Although judges must still *consider* the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§ 3553(a) ].   Indeed, as one district judge has already observed, the remedial majority in Booker [] direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the history and characteristics of the defendant.   But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth.   The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the history and characteristics of the defendant.

*United States v. Glover*, 431 F.3d 744, 752-53 (11th Cir. 2005)(quoting United *States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005)(internal citations and quotations omitted)(emphasis in original), *abrogation on other grounds*, *United States v. Joseph,* 371 Fed.Appx. 70 (11th Cir. 2010)(unpublished)). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

Similar to the notorious (former) crack guidelines, which created fundamentally unjust sentences with harsh and unfair sentences, the penalties predicated for child pornography

offenses under USSG § 2G2.2 are not the product of reasoned judgment or of a deliberative process. *See United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008)(concluding that the sentencing guidelines for child pornography crimes "do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."); Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (Jan. 1, 2009). *See also United States v. Riley*, 655 F.Supp.2d 1298, 1300-04 (S.D.Fla. 2009)(citing Stabenow article and other case law in imposing 60 month sentence in transporting child pornography case, rather than recommended Sentencing Guidelines range of 210 to 260 months and finding that § 2G2.2 did not exemplify the Sentencing Commission's characteristic institutional role of careful study and empirical analysis); *United States v. Hanson*, 561 F.Supp.2d 1004, 1009-11 (E.D.Wis. 2008)(citing Stabenow article and other case law in imposing a 72-month sentence, rather than recommended Sentencing Guidelines range of 210 to 260 months in transporting and possessing child pornography prosecution, and finding that § 2G2.2 did not exemplify the Sentencing Commission's characteristic role of empirical study). *Grober*, 595 F.Supp.2d at 382 (citing Stabenow article and other case law in imposing 60-month sentence where guidelines recommended 235 to 293 months).

Consistent with these cases, the Sentencing Commission's recent Congressional Report demonstrates the essential failure of the child pornography guidelines. In preparing its analysis for Congress regarding the child pornography guidelines for non-production offenders, the Commission explained that it compiled the report in large part due to the increasing rate of

below-guideline sentences under USSG § 2G2.2. (CP Report at ii). Such an examination was necessary pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions." *Id*. Moreover, the recent technological changes make "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id*. at ii, 323. Specifically, the Commission noted that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders." *Id*. at xi.

As a result, USSG § 2G2.2's cumulative enhancements including both the content and number of images resulted in guideline ranges that were overly severe for certain offenders. *Id*. Measures of culpability including enhancements for the distribution of child pornography, number of images, and sado-masochistic images were "generally not associated with significantly higher rates of [criminally sexual dangerous behavior]." *Id*. at 204. Thus, USSG § 2G2.2 placed a "disproportionate emphasis on outdated measures of culpability regard offenders' collecting behavior and insufficient emphasis on offenders' community involvement and sexual dangerousness." *Id*. at 321. Such a fact is underscored by the multiple § 2G2.2 enhancements in the majority of cases.

For example, the enhancement for possessing prepubescent images and the use of a computer applied in 96.3% of the cases. (*Id*. at 209, tbl. 8-1, hereto attached as Exh. 5) Furthermore, the enhancement for over 500 images and sado-masochist images applied in 96.9% and 74.2% of all cases, respectively. *Id*. Because of these inherent flaws in § 2G2.2, which were the product of Congressional directives rather than empirical study, the Commission requested

the authority to amend the child pornography guidelines to address its problems. *Id*. at xviii, 322. As recognized by the national Coordinator for Child Exploitation Prevention and Interdiction, U.S. Dept. of Justice, "The Department agrees with the Commission's conclusion that advancements in technologies and the evolution of the child pornography "market' have led to a significantly changed landscape - - one that is no longer adequately represented by the existing sentencing guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-represent the seriousness of an offender's conduct and the danger an offender possesses." *See* Letter from Anne Gannon, U.S. Dep't of Justice, One Columbus Circle, to Hon. Patti B. Saris, Chair, U.S. Sent'g Comm'n (Mar. 5, 2013), hereto attached Exh. 6).

To further underscore the inherent irrationality of the child pornography guidelines in the instant case, Mr. Ahearn's guideline offense level of 22 for the possession of child pornography is nearly twice as high as the guideline level that would apply if he actually had sex with a minor. *See* USSG § 2A3.2, titled Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts. An adult who statutorily rapes a minor faces a base offense level of 18, with no minimum mandatory imprisonment. *See* USSG § 2A3.2(a). After applying a two level increase for use of a computer pursuant to USSG § 2A2.3(b)(3) and then applying a three level reduction for acceptance of responsibility and timeliness of plea, the total offense level would be 17.

Such a guidelines calculation underscores the fact that the Sentencing Commission and

Congress have thus concluded that an adult who actually sexually penetrates a minor will face a sentencing range beginning at two years, as opposed to the mandatory minimum of five years for not having ever engaged in a contact offense with a child but only possessed one or more images of such an act.

When a guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 109-10. Importantly, this Court may impose a below guideline sentence simply because it disagrees with the policy decisions underlying a specific guideline. *See Peugh v. U.S.*, 133 S.Ct. 2072, 2089 (2013) (Thomas, J., dissenting) ("A district court may freely depart from the range recommended by the Guidelines based not only on "an individualized determination that [the Guidelines] yield an excessive sentence in a particular case," but also based on 'policy disagreement' with the Guidelines themselves.").

Many federal judges appear to agree that the guidelines overrepresent the offense of child pornography. As testified to by Judge Gregory Presnell, Middle District of Florida, federal courts have afforded less deference to the child pornography guidelines because they are "inherently illogical" and "not based on any empirical data or institutional analysis." *See* Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n at 2 (Feb. 2009)(statement of Gregory A. Presnell, Judge, M.D. Fla.) available at http://www.ussc.gov/AGENDAS20092010/Presnell_statement.pdf.

Indeed, in the first quarter of 2015 (Oct. 1, 2014 through Dec. 31, 2014), judges

sentenced 389 cases pursuant to § 2G2.2. Of these cases, judges sentenced defendants within the guidelines range in only 126 cases, an upward departure in only *one* case, and non-government sponsored downward departures in 6 cases and non-government sponsored below range in 169 cases.(*See* Quarterly Report for the United States Sentencing Commission attached as Exh. 6, at Tbl. 5 at 14). Furthermore, in the first quarter of 2014, judges in child pornography cases granted downward departures by a 44.3% median percent decrease from the guideline minimum. (*See id.* at Tbl. 10 at 22) (compared to the offense of sexual abuse with a 0% median percent decrease from the guideline minimum). In the same quarter, judges in child pornography cases granted downward departures by *Booker* or 18 U.S.C. § 3553 reductions by a 47 median decrease from guideline minimum to result in a median sentence of 54 months. (*Id*. at Tbl. 11 at 23).

Finally, the problem that the guidelines pose in Mr. Ahearn's case is that they cannot account for the unique factors of his case which supports his request for a variance. Pursuant to U.S.S.G. chapter 1 part A comment 4(b), this Court may depart where conduct "atypical" and "significantly" different than the norm is found. *U.S. v. Rita*, 551 U.S. 338 (a traditional departure is justified, if the offense or offender is "atypical" and thus not within the "min-run of similar" cases. Slip op. at 4, 20. *See also U.S. v. Sicken*, 223 F.3d 1169 (10th Cir. 2000).

Based on the above policy considerations, in light of the facts and law applicable to Mr. Ahearn's case, five years imprisonment is an appropriate sentence.

## <u>CONCLUSION</u>

The circumstances presented in Mr. Ahearn's case justify a departure from the Sentencing Guidelines.   Because the decision in *Booker* has made the Guidelines advisory and the parsimony clause of § 3553(a) the paramount consideration, the history and characteristics of Mr.

Ahearn show that a sentence below the advisory guideline range is "sufficient but not greater

necessary to comply with" the goals of sentencing.  Mr. Ahearn, therefore, requests this Court to

impose a sentence of five years incarceration.

Respectfully Submitted,

*/s/ Lydia Pittaway*
Fla. Bar No.: 44790
Pittaway Law, P.L.L.C.
Mailing Address:
P.O. Box 162691
Altamonte Springs, Florida 32716
Telephone: 772-494-1821, 407-982-5948
Facsimile: 407-674-2524
Lydia@PittawayLaw.us
Co-Counsel for Richard Ahearn

## CERTIFICATE OF SERVICE

I HEREBY certify that on January 22, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Lydia Pittaway*
Fla. Bar. No. 44790

*U.S. v. RICHARD AHEARN*, Case No.: 2:15-cr-14045-RLR

EXHIBIT LIST

Newspaper Articles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1
*Polygraph Reports by Robert Hamilton* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 2
Economist, Unjust and Ineffective (Aug. 6, 2009)  . . . . . . . . . . . . . . . . . . . . . . . .  Exhibit 3
U.S.S.C., *Measuring Recidivism* (May 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Exhibit 4
Letter from Anne Gannon, U.S. Dep't of Justice  (Mar. 5, 2013) . . . . . . . . . . . . . . . .  Exhibit 5
Quarterly Report for the United States Sentencing Commission . . . . . . . . . . . . . . . . . Exhibit 6